**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| DAINE CRAWLEY, | Case No.: 3:22-cv-00530-CSD |
| Plaintiff | **Order** |
| v. | Re: ECF No. 41 |
| CHARLES DANIELS, et al., | |
| Defendants | |

Before the court is Plaintiff's motion for partial summary judgment as to liability on his Fourteenth Amendment due process claims. (ECF No. 41.) Defendants filed a response. (ECF No. 46, 46-1 to 46-8.) Plaintiff filed a reply. (ECF No. 49.)

For the reasons set forth below, Plaintiff's motion is granted in part and denied in part, and Defendants are granted summary judgment as to certain aspects of Plaintiff's due process claims pursuant to Federal Rule of Civil Procedure 56(f)(1).

**I. BACKGROUND**

Plaintiff is an inmate in custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this civil rights action pursuant to 42 U.S.C. § 1983. The events giving rise to this action took place while Plaintiff was housed at Warm Springs Correctional Center (WSCC). The court screened Plaintiff's first amended complaint (FAC) and allowed him to proceed with Fourteenth Amendment due process claims against defendants Charles Daniels, Brian Williams, Robert Suwe, Kody Hollaway, Richard Ashcraft, Robert Robison, and Kyle Olsen. (ECF No. 9.)

Plaintiff's claims are based on allegations that in October and November 2021, NDOC used an "ampule" test, that actually only tests for "bath salts," to find him guilty of disciplinary

infractions, including introducing contraband into WSCC. He avers that the test is unreliable and results in false positives, and he was denied a secondary test to ensure the accuracy of the ampule test results. Plaintiff further alleges that he was not given access to the evidence leading to the charges. (ECF Nos. 8, 9.)

Plaintiff moves for partial summary judgment as to the liability of Defendants for the alleged due process violations. Defendants oppose the motion, and assert they are entitled to summary judgment under Federal Rule of Civil Procedure 56(f).

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that

one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute

be shown to require a jury or judge to resolve the parties' differing versions of truth at trial."
*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

A motion for summary judgment must contain a concise statement setting forth each fact material to the disposition of the motion (i.e., each fact the moving party claims cannot be genuinely disputed or is genuinely disputed) and cite to the *particular portions* of evidence (such as a pleading, declaration, deposition, interrogatory response, admission) on which the party relies. Fed. R. Civ. P. 56(c)(1); LR 56-1. Plaintiff's motion contains some 250 pages of exhibits. However, Plaintiff's statement of undisputed facts fails to cite to the *particular portions* of evidence on which he relies. On this occasion, the court has reviewed the evidence submitted by Plaintiff. In the future, if Plaintiff fails to comply with these rules, it could result in his motion being denied.

**A. Facts**

There are two disciplinary proceedings that are relevant to Plaintiff's claims: Offense in Custody (OIC) 501633 and OIC 502792. The following facts are undisputed:

**1. OIC 501633**

Defendant Suwe wrote a notice of charges against Plaintiff on October 13, 2021, for an MJ53, which is the possession and sale of intoxicants. Suwe's report states that he was assigned

4

as an institutional investigator at WSCC, and the mailroom handed him an envelope that was addressed to Plaintiff from an individual named Wayne Sinclair which appeared to be saturated in a 2.5-inch by 3.5-inch area of the bottom left corner. According to Suwe's report, part of the street name was illegible, and therefore, it appeared to be a fictional return address. Due to the suspicious nature of the envelope, a synthetic cannabinoid test was completed on the envelope, which produced a positive result. In addition, a review of Plaintiff's phone calls was conducted and multiple phone calls were discovered which contained conversations regarding the introduction of narcotics into WSCC. (ECF No. 46-1 at 2.)

Plaintiff had a preliminary hearing with Officer Travis Fratis (not a defendant) on October 16, 2021. Plaintiff entered a plea of not guilty, and gave a statement that he disputed the results of the test, indicating that he would pay for another test. He also said that he knew the sender—Wayne Sinclair— and represented that the address was legitimate. The preliminary hearing was initially suspended because Plaintiff had an interest in seeing photographic evidence that Fratis was unable to produce. Fratis entered an update on November 5, 2021, clarifying the address on the envelope appeared to be legitimate. Relying on Suwe's report, Fratis referred the matter for a disciplinary hearing. (ECF No. 46-1 at 3.)

Plaintiff had a disciplinary hearing before Defendant Ashcraft on November 10, 2021. Ashcraft confirmed Fratis' finding that the address was legitimate. Plaintiff reiterated his request to have a new test done on this piece of mail. He also asked that he be provided with "all of the sensitive information" that supported the charge. Ashcraft told Plaintiff that he did not have the authority to disclose the sensitive information to Plaintiff, and only a warden or associate warden could make that determination. Ashcraft did note that Plaintiff had a copy of the pictures. Ashcraft found Plaintiff guilty based on Suwe's report, and in particular, the positive test finding.

Plaintiff was sentenced to statutory time loss of 30 days, loss of canteen and phone privileges for 60 days, and restitution, if necessary. (ECF No. 46-1 at 5-9; ECF No. 47, recording of hearing for OIC 501633.)

Plaintiff filed a grievance (number 2006-31-129599) about this mail, where he requested a second laboratory test because he believed the ampule test was fabricated. He also asked for a copy of the envelope/evidence in question. (ECF No. 46-6 at 4, 8; ECF No. 41 at 211-12.) A first level response from Widmar (not a defendant) indicated that the grievance had been partially granted insofar as Plaintiff received a copy of the mail addressed to him and photographic evidence presented in the disciplinary hearing. He was advised that he would be presented with the photographs again. (ECF No. 46-6 at 3; ECF No. 41 at 210.) Plaintiff sent a second level grievance stating he had not received any physical copies of the mail dated October 13, 2021, or the positive test. He reiterated that the mail had not been sent for further testing, and the address was legitimate. (ECF No. 41 at 206-209.) Gittere (not a defendant) responded to the second level grievance stating again that Plaintiff was told he received a copy of the mail, and that in addition to the ampule test, outgoing mail and phone conversations were used to find Plaintiff guilty. Gittere's second level grievance refers to a NIK test utilized by Hollaway "for all of 2021," stating that it is a reputable narcotics test and that another test was unnecessary. (ECF No. 46-6 at 2; ECF No. 41 at 205.)

Plaintiff filed another grievance which was his disciplinary appeal for OIC 501633 (grievance number 2006-31-30317). He asked the warden to authorize a lab test for the mail because he believed the ampule test was falsified or compromised in some manner. He also said that his rights were violated because he was not given sensitive information referred to in the charge. (ECF No. 46-7 at 6; ECF No. 41 at 186-188 .) Widmar (not a defendant) responded to

the first level grievance, stating that Plaintiff received copies of the mail that was seized, and that any evidence not given to Plaintiff was deemed confidential pursuant to Administrative Regulation (AR) 707.1.10. Widmar noted the letter was addressed to Plaintiff from a person he knows, and the item tested positive. (ECF No. 46-7 at 5.) In his second level grievance, Plaintiff requested that another lab test be done, claiming that ampule tests are inaccurate due to false positives. Plaintiff offered to have another test done at his expense. He reiterated that he was not given copies of the mail or evidence. (ECF No. 46-7 at 5; ECF No. 41 at 180-183.) Defendant Williams responded at the second level, noting that Plaintiff received copies of the mail seized and that the evidence he was not given to review was deemed confidential pursuant to AR 707.1.10. He also noted the letter in question was addressed to Plaintiff by a person Plaintiff knows and tested positive by staff trained to administer the test. (ECF No. 46-7 at 2-3.)

**2. OIC 502792**

Plaintiff was charged by Defendant Hollaway with an MJ31, unauthorized use of equipment or mail, related to an incident on November 10, 2021. The notice of charges indicates the evidence supporting the charge was *in camera* in the WSCC evidence vault. Hollaway's report of violation states that he was working as an institutional investigator at WSCC, and it was determined through investigative process, staff reports, and screened inmate correspondence that Plaintiff conspired to introduce contraband into WSCC through the inmate legal mail system. (ECF No. 46-2 at 2.)

Plaintiff had a preliminary hearing before Defendant Robison on November 16, 2021, where Plaintiff entered a plea of not guilty. Plaintiff gave a statement that he would like to see more evidence and testing done on the mail, and offered to pay for outside testing. Robison

referred the matter for a disciplinary hearing. For the evidence relied on, the form states: "Officer's report and substance testing done." (ECF No. 46-2 at 3.)

Plaintiff's disciplinary hearing was held on December 15, 2021. Ashcraft was Plaintiff's disciplinary hearing officer again, but the other members of the committee were Buchanan (not a defendant), and Suwe. Plaintiff asked whether it was okay to have a person on the disciplinary committee who had previously charged Plaintiff (referring to Suwe). Ashcraft responded that it was fine because Suwe did not charge Plaintiff with this violation. Plaintiff accepted this statement and agreed to go forward.

There was then a discussion about the evidence supporting this charge. Ashcraft referenced Hollaway's report which discussed an investigation and "screened inmate correspondence."

Plaintiff asserted that he had only two pieces of mail that went out that week—a book and a piece of legal mail—and he had no phone conversations. Ashcraft reiterated that "it goes back to screened inmate correspondence" and noted that the report did not say it was *Plaintiff's* correspondence. Plaintiff asked if he could see this evidence, and Ashcraft said no, he was not going to provide Plaintiff with the *in camera* evidence. Plaintiff asserted that this violated his due process rights as Plaintiff was being charged based on something he had never seen. Plaintiff argued that Hollaway told him that a piece of legal mail was the basis of the write-up. Ashcraft told Plaintiff that he was assuming that the evidence was the legal mail.

Plaintiff and Ashcraft then discussed Robison's statement in the preliminary hearing form that substance testing had been done. Ashcraft confirmed that he spoke with Robison who acknowledged this was a mistake, and there was no substance testing done on the evidence. Plaintiff argued that Robison's statement jeopardized his disciplinary hearing. Ashcraft advised

Plaintiff that he was not using Robison's statement to determine the outcome of the disciplinary hearing. Plaintiff then asked what evidence Ashcraft was using to determine the outcome of the hearing and Ashcraft responded he was relying on the officer's (Hollaway's) report and the *in camera* evidence. Ashcraft reiterated he would not give Plaintiff the *in camera* information, but that it was "inmate correspondence" and not "legal correspondence."

Ashcraft found Plaintiff guilty based on Hollaway's report and unspecified *in camera* evidence. Plaintiff was sanctioned to statutory time loss of 60 days, he lost canteen and phone privileges for 90 days, and he was assessed with restitution, if necessary. (ECF No. 46-2 at 4-7; ECF No. 47, recording of hearing for OIC 502792.)

Plaintiff filed a disciplinary appeal of OIC 502972 (grievance 2006-31-31275). Plaintiff asserted that the "substance testing" portion of the preliminary hearing was not factual. Plaintiff argued that the write-up was for screened correspondence, but legal mail cannot be held for longer than 24 hours and cannot be monitored. He also claimed the mailroom never returned his rejected mail. He further asserted that Suwe should not have been part of the disciplinary committee. Finally, he claimed the recording of the hearing would demonstrate Ashcraft had no evidence. (ECF No. 46-8 at 8-11; ECF No. 41 at 228-230.) Widmar (not a defendant) responded at the first level that Hollaway wrote the charges and Suwe was only involved with the disciplinary committee, so there was no conflict. (ECF No. 46-8 at 2, 7; ECF No. 41 at 226.)

In the second level grievance, Plaintiff reiterated his claim that Robison falsified the preliminary hearing by stating that testing was done. He also asserted that regulations were violated in terms of monitoring his legal mail and in not timely issuing a rejection notice for the mail. He reiterated his claim that there was no evidence presented for this write-up, and that Officer Suwe should not have been part of the committee because he was involved in a previous

1   investigation. (ECF No. 41 at 222-225.) Gittere (not a defendant) responded that AR 750.02(4)

2   authorizes the prohibition of outgoing mail under certain circumstances, such as mail found to

3   facilitate criminal activity. He also found that Plaintiff's guilty finding was supported by some

4   evidence. (ECF No. 46-8 at 3; ECF No. 41 at 221.)

5   **B. Due Process**

6        "The Supreme Court established in *Wolff v. McDonnell* that there are procedural due

7   process rights that a prisoner must be afforded in the context of a prison disciplinary proceeding

8   prior to being deprived of a protected liberty interest." *Melnik v. Dzurenda*, 14 F.4th 981, 985

9   (9th Cir. 2021) (citing *Wolff v. McDonnell*, 418 U.S. 539, 555-72 (1974)).

10       When an inmate faces disciplinary charges, due process requires that the inmate receive:

11  (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives the

12  written notice and the time of the hearing so that the prisoner may prepare his defense; (3) a

13  written statement by the hearing officer of the evidence relied upon and the reasons for taking

14  disciplinary action; (4) the right to call witnesses in his defense, when permitting the inmate to

15  do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal

16  assistance if the prisoner is illiterate or the issues presented are legally complex. *Wolff*, 418 U.S.

17  at 556.

18       "If a prisoner must be allowed to present evidence in his defense, it necessarily follows

19  that he must have some right to prepare for that presentation." *Melnik*, 14 F.4th at 985. "With no

20  access to the evidence that will be presented against him, a prisoner could neither build a defense

21  nor develop arguments and evidence to contest the allegations at the disciplinary hearing." *Id.* As

22  such, the right "to 'present documentary evidence in' the prisoner's own defense must generally

23  include the ability to obtain that documentary evidence in the first place." *Id.* at 986 (quoting

1    *Wolff*, 418 U.S. at 566). "Similarly, if a prisoner is to be able to respond to evidence presented

2    against him, as a general proposition he should be allowed to know what it is and to examine it,

3    unless there is reason to the contrary." *Id*.

4           That being said, "a prisoner's right to access and prepare evidence for a disciplinary

5    hearing is not unlimited nor unfettered. It may be limited by prison officials if they have a

6    legitimate penological reason." *Id*. (citation and quotation marks omitted). "If granting a prisoner

7    access to the requested evidence would be unduly hazardous to institutional safety or

8    correctional goals, access may be denied." *Id*. at 986-87 (citation and quotation marks omitted).

9    In addition, the penological reason "must be legitimate [and] not merely pretense or pretext." *Id*.

10   at 987. "The denial of access may not be arbitrary[.]" *Id*.

11          The Ninth Circuit gave examples of reasons that are not legitimate such as "labeling a

12   document 'confidential' without real confidentiality concerns[.]" *Id*. at 987 (citation omitted).

13          The prison "may be required to provide an explanation when they deny a prisoner access

14   to evidence, either in the administrative record or through testimony in court if the denial is

15   challenged." *Id*. (citations omitted).

16          While "[w]ithholding confidential information from a prisoner may be a legitimate

17   penological reason for denying a prisoner access to evidence," the defendant must identify the

18   justification for keeping the evidence confidential from the inmate. *Id*. at 988.

19          In addition, "the requirements of due process are satisfied if some evidence supports the

20   decision by the prison disciplinary board." *Superintendent Mass. Corr. Inst. v. Hill*, 472 U.S. 445

21   455 (1985). "[T]he relevant question is whether there is *any* evidence in the record that *could*

22   support the conclusion reached by the disciplinary board." *Id*. at 455-56 (citations omitted,

23

1  emphasis added). The Constitution "does not require evidence that logically precludes any

2  conclusion but the one reached by the disciplinary board." *Id*. at 457.

3  **1. OIC 501633**

4         **a. Some Evidence & the Ampule Test**

5       The court construes Plaintiff's allegation that his due process rights were violated by the

6  use of the ampule test to find him guilty of this disciplinary infraction and his allegation that the

7  test is actually a "bath salt" test as an argument that his disciplinary finding was not supported by

8  "some evidence."

9       Plaintiff *alleges* the ampule test is actually a "bath salt" test and the test has high false

10  positive rates, and there was a false positive in his case, but Plaintiff does not support these

11  assertions with any *evidence*. He provides copies of pages of a publication that he represents is

12  from the manufacturer of the test—MMC International—but  the representations Plaintiff

13  attributes to the publication are noticeably absent.  Instead, the publication states that the test has

14  "high reliability and consistency" and is "accurate and sensitive." (ECF No. 41 at 264.)

15       Plaintiff relies on two trial court level cases from Washington and Massachusetts to

16  support his argument that his due process rights have been violated: *Green v. Massachusetts*

17  *Department of Corrections* (Mass. Sup. Ct, Suffolk County, Case 2184CV02283C) and *Bell v.*

18  *Washington State Department of Corrections* (Wash. Sup. Ct., Thurston County, Case 23-2-

19  03083-34).

20       *Green* is a class action complaint brought in Massachusetts Superior Court for Suffolk

21  County for violations of Massachusetts law. The plaintiffs in *Green* alleged that their due process

22  rights as well as their right to counsel under Massachusetts law were violated by the

23  Massachusetts Department of Corrections' (DOC) use of the NARK 2023 chemical test to detect

illegal synthetic cannabinoids on incoming mail. *Green v. Mass. Dep't of Corr.*, No. 2184CV02293C, 2021 WL 6335670, at *1 (Sup. Ct. Mass. Nov. 30, 2021). The plaintiffs in that case moved for a preliminary injunction seeking to enjoin the Massachusetts DOC from imposing punitive or disciplinary measures against inmates based on positive results obtained from the NARK test. The Massachusetts trial level court granted the motion for preliminary injunction and enjoined the Massachusetts DOC from imposing punitive or disciplinary measures based solely on positive NARK test results.

The court's findings in *Green*, however, were based on specific evidence submitted to the court by the parties concerning the Massachusetts DOC use of the NARK test, evidence directly from the manufacturer of the test about the merely presumptive nature of that particular test, and the manufacturer's express warning that the test results must be confirmed by an approved lab. The plaintiffs in *Green* submitted "substantial evidentiary support" for their allegation that the NARK test has an extremely high false positive rate. The plaintiffs also submitted evidence that the NARK test did not even detect the most common synthetic cannabinoids. Moreover, the court's grant of injunctive relief was based on a finding that the plaintiffs demonstrated a likelihood of success on their claims concerning the assistance of counsel, access to the courts, and due process, all under Massachusetts state law.

*Bell* is a class action filed in the Superior Court Washington for Thurston County challenging the Washington Department of Corrections' (DOC) practice of using presumptive drug tests on mail as a basis for imposing prison discipline. The plaintiffs allege that this is a violation of the Washington Constitution's Cruel and Unusual Punishment and Due Process Clauses, and also assert state law claims for intentional and negligent infliction of emotional distress. The tests at issue in *Bell* included tests from DetectaChem and MMC's Phenethylamine

1  test kit (which appears to be different from the ampule test at issue here). (Dkt. #1 in Case 23-2-

2  03083-34.) On January 5, 2024, the Washington Superior Court granted the Washington DOC's

3  motion to dismiss the constitutional damages claim with prejudice for failure to state a

4  cognizable claim for relief. (Dkt. # 47 in Case 23-2-03083-34.) On August 2, 2024, the

5  Washington Superior Court granted the Washington DOC's motion for judgment on the

6  pleadings and dismissed the lawsuit. (Dkt. # 125 in Case 23-2-03083-34.)

7         This court is not bound by any pronouncements made by *Green* and that case has no

8  persuasive value as it does not address federal due process rights under the Fourteenth

9  Amendment of the United States Constitution. Importantly, Plaintiff has not submitted any

10  evidence similar to what was relied upon by the Massachusetts court in granting injunctive relief.

11  The court has no actual evidence with respect to the test used by NDOC in this instance

12  concerning reliability or false positive rates. Nor is there evidence before the court of any

13  warning by the manufacturer that the test result is only a presumptive positive, or that further

14  laboratory testing should be conducted to confirm a positive result. Moreover, Plaintiff's reliance

15  on *Bell* is misplaced as that case has now been dismissed.

16         For these reasons, Plaintiff is not entitled to summary judgment insofar as he alleges that

17  his due process rights were violated because the allegedly unreliable ampule test was used to find

18  him guilty of a disciplinary infraction.

19         Under Federal Rule of Civil Procedure 56(f), after having notice and a reasonable

20  opportunity to respond, the court may grant summary judgment in favor of the non-moving

21  party. Fed. R. Civ. P. 56(f)(1); *see also Albino v. Baca,* 747 F.3d 1162, 1176-77 (9th Cir. 2014)

22  (citations omitted); Wright & Miller, Federal Rules of Civil Procedure, § 2720.1 (4th ed.) ("The

23

1   practice of allowing summary judgment to be entered for the nonmoving party in the absence of

2   a formal cross-motion is appropriate.").

3        Here, Defendants did not file a cross-motion. However, in their response to Plaintiff's

4   motion, they state that they are seeking summary judgment in their favor. With respect to this

5   claim, they argue the ampule test is a reputable narcotics test, and therefore, another test was not

6   necessary, and Plaintiff's rights were not violated. (ECF No. 46 at 10-11.) To support this

7   argument, Defendants cite only an officer's brief statement in response to a grievance that the

8   tests are reputable, but, like the Plaintiff, Defendants provide no actual *evidence* to support their

9   position.

10        Defendants do argue that those who did not participate in the alleged constitutional

11   violation are entitled to summary judgment under Rule 56(f). "42 U.S.C. § 1983 creates a cause

12   of action against a person who, acting under color of state law, deprives another of rights

13   guaranteed under the Constitution." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). "In

14   order for a person acting under color of state law to be liable under section 1983 there must be a

15   showing of personal participation in the alleged rights deprivation[.]" *Id.* (citations omitted).

16        Here, defendant Suwe wrote the notice of charges and conducted the ampule test.

17   Ashcraft relied on the positive test result, at least in part, in finding Plaintiff guilty at the

18   disciplinary hearing. Williams upheld the disciplinary finding based, at least in part, on the

19   positive test result. There is no evidence that Daniels, Hollaway, Robison, and Olsen had any

20   involvement in this alleged constitutional violation. Plaintiff makes vague assertions that all

21   Defendants had knowledge of the violations or that they were involved in these policies, but he

22   provides no evidence to support his suppositions.

23

The court will not grant summary judgment under Rule 56(f) in favor of Defendants Suwe, Ashcraft, and Williams insofar as Plaintiff alleges that his due process rights were violated because of the use of the ampule test. However, the court will grant summary judgment under Rule 56(f) in favor of defendants Daniels, Hollaway, Robison, and Olsen as to this aspect of Plaintiff's due process claim.

### b. Evidence Used Against Plaintiff

The charge against Plaintiff mentioned the envelope, test results, and phone conversations that were reviewed and supported the charge. At the preliminary hearing, Plaintiff requested to see the photographic evidence. At the disciplinary hearing, he asked that he be provided with "all of the sensitive information." Ashcraft indicated he would not disclose this information, but noted Plaintiff did have the pictures. Plaintiff filed a grievance asking for a copy of the envelope/evidence, and he was told that he had received a copy of the mail and photographic evidence, though the photographic evidence is not described. In his second level grievance, Plaintiff reiterated he had not been provided with physical copies of the mail or the positive test result. The second level response confirms that the test, outgoing mail, and phone conversations were used to find him guilty. In his disciplinary appeal, he again asserted that he had not been provided with the sensitive information referred to in his charge. Widmar told him that he was given copies of the mail that was seized, but any evidence not given to him was deemed confidential under AR 707.1.10. This was reiterated by Williams at the second level.

### i. Photographic and Mail Evidence

Whether Plaintiff actually received photographic and mail evidence is genuinely disputed. Plaintiff maintains that he never received the photographic evidence and mail even

though the grievance indicated that he would be given the photographs. Defendants maintain he received the photographs and the mail.

Plaintiff's motion for summary judgment is denied insofar as he claims his due process rights were violated when he was not given the photographic and mail evidence to support OIC 501633. Defendants' request for summary judgment under Rule 56(f) is likewise denied as there is a dispute as to whether Plaintiff received the photographic and mail evidence supporting this charge, except that their request for summary judgment under Rule 56(f) is granted as to defendants Daniels, Hollaway, Robison, and Olsen as there is no evidence that they personally participated in this alleged constitutional violation.

### ii. Positive Test Result and Sensitive Information

It does not appear Plaintiff received the positive test result, and he did not receive any of the "sensitive information" that supported his guilty finding, including being able to review recordings of transcripts of the phone conversations or any other sensitive information that supported this charge. The only reason give for withholding this information is AR 707.1.10.

AR 707.1.10 pertains to the use of confidential informant information and states that an inmate may be found guilty of a disciplinary offense on the basis of information from a source whose identity is not disclosed at the disciplinary hearing. That AR provides that "[t]he record of the Disciplinary Hearing shall contain a NDOC employee's affirmative statement that safety considerations prevent the disclosure of the informant's name to the accused." (ECF No. 46-5 at 32.) In addition, after considering the statement of a confidential informant, the disciplinary hearing officer/committee "shall, to the extent possible, disclose the details to the accused inmate[,]" but "may be withheld from the accused inmate if disclosure would place the informant at risk by indirectly revealing their identity." (*Id*. at 33.)

First, Defendants do not address the fact that Plaintiff claims he was not provided with the positive drug test result.

Second, insofar as the sensitive information is concerned, Ashcraft did not mention at the disciplinary hearing that the guilty finding was based on information from a confidential informant. Nor did Ashcraft state that safety considerations prevented disclosure of the informant's name to Plaintiff. No details of the information provided from a confidential informant were disclosed to Plaintiff during the hearing, or in response to his grievance. Nor was a finding made that disclosure would place the informant at risk.

There may be legitimate penological reasons for not disclosing a confidential informant's identity or statements to an accused at a disciplinary hearing, but those reasons were not disclosed either in Plaintiff's hearing, in response to his grievance and disciplinary appeal for this charge, or in this litigation. Simply designating information as *in camera* or confidential without providing an explanation as to why the information is confidential is insufficient. *See Melnik*, 14 F.4th at 987.

In sum, Plaintiff's motion for summary judgment is granted insofar as he alleges that his due process rights were violated because he was not given the positive drug test results or any of the sensitive information supporting the charge for OIC 501633 and no legitimate penological reason has been provided for withholding this evidence. Conversely, Defendants are not entitled to summary judgment under Rule 56(f) insofar as Plaintiff alleges he was not provided with the positive drug test result or the sensitive information supporting the charge because they have provided no evidence this this information was provided to Plaintiff or that a legitimate penological reason was given for refusing to provide this information. Defendants' Rule 56(f)

motion will be granted, as discussed *infra*, insofar as there are Defendants who did not participate in this constitutional violation.

The court will now address against which Defendants summary judgment should be granted for this aspect of Plaintiff's due process claim.

Suwe drafted the notice of charges which indicates that the evidence supporting the charge was "*in camera*" and "booked." (ECF No. 41 at 199.) Ashcraft conducted Plaintiff's disciplinary hearing and determined Plaintiff would not have access to sensitive information supporting the charge. The only defendant involved in Plaintiff's disciplinary appeal grievance was Williams, and he confirmed that Plaintiff would not be provided with access to the confidential information. Plaintiff has presented no evidence, and there is no evidence in the exhibits submitted by Defendants, that defendants Daniels, Hollaway, Robison, or Olsen were involved in the determination not to provide Plaintiff with this evidence. Therefore, summary judgment is only granted with respect to defendants Suwe, Ashcraft, and Williams.

Defendants request that summary judgment be entered in their favor under Rule 56(f) with respect to those Defendants who did not personally participate in the alleged constitutional violation. Plaintiff has presented no evidence that defendants Daniels, Hollaway, Robison, or Olsen were involved in the determination not to provide Plaintiff with this evidence.

Plaintiff argues that Olsen may be liable for failing to correct the situation or for accepting a policy or custom, but he provides no evidence that Olsen knew of any constitutional violation and failed to rectify the situation or evidence that he enacted or promulgated a policy of violating due process in disciplinary hearings. Plaintiff further asserts that wardens or high-level officials such as Daniels who are designated to decide disciplinary appeals have a duty to conduct an investigation, but he provides no evidence that Daniels was involved in his

1  disciplinary appeal for OIC 501633. In his reply brief, Plaintiff argues that each Defendant knew
2  that he did not receive any photographic evidence related to OIC 501633, but he provides no
3  *evidence* of how each of these Defendants knew this fact.

4      Therefore, Defendants' motion should be granted under Rule 56(f) as to Daniels,
5  Hollaway, Robison, and Olsen on this aspect of Plaintiff's due process claim concerning OIC
6  501633.

7      **2. OIC 502972**

8          **a. Evidence Used Against Plaintiff & Some Evidence to Support the**
9      **Disciplinary Finding**

10      The notice of charges indicates the evidence supporting the charge was *in camera* in the
11  evidence vault. The charge relied on the "investigative process, staff reports and screened inmate
12  correspondence." At the preliminary hearing before Robison, Plaintiff indicated that he wanted
13  to see more evidence. At the disciplinary hearing, Ashcraft noted that Hollaway's report
14  discussed an "investigation" and "screened inmate correspondence." Plaintiff said he only had
15  two pieces of mail that week, and Ashcraft again said that it goes back to the "screened inmate
16  correspondence," which was not necessarily Plaintiff's correspondence. Plaintiff asked to see the
17  evidence, and Ashcraft made it clear he was not going to provide the *in camera* evidence, though
18  he relied on that evidence in finding Plaintiff guilty. In his disciplinary appeal, Plaintiff argued
19  that no evidence was presented to support the write-up.

20      In *Melnik*, the Ninth Circuit rejected the argument that an inmate could be denied access
21  to evidence being used against him in a disciplinary proceeding simply because NDOC decided
22  to store it in the evidence vault. *Melnik*, 14 F.4th at 988. In *McNeil v. Gittere*, the undersigned
23  concluded that the same logic applied to evidence designated *in camera* by NDOC. *McNeil v.*

20

*Gittere*, No. 3:20-cv-00668-APG-CSD, 2023 WL 3881372, at *9  (D. Nev. Jan. 10, 2023), report and recommendation adopted, 2023 WL 3615348 (D. Nev. May 22, 2023).

Plaintiff clearly requested that he be allowed to review the evidence supporting the charge against him on multiple occasions, but he was denied that opportunity at every level. Plaintiff was not given an explanation in his notice of charges, at the preliminary hearing, the disciplinary hearing, the disciplinary appeal, or in this litigation as to why he was not able to review the evidence supporting the charge against him. As a result, it is also not clear that the disciplinary finding is supported by some evidence.

Plaintiff is entitled to summary judgment insofar as he claims his due process rights were violated when he was not given an opportunity to review the evidence used against him for OIC 502792, and he was never given a legitimate penological reason for withholding this evidence and insofar as he alleges that this charge was not supported by some evidence.

The court will again address against whom summary judgment will be granted as to this aspect of his due process claim. Hollaway drafted the notice of charges against Plaintiff, which included a statement that the evidence supporting the charge was *in camera*. Robison conducted Plaintiff's preliminary hearing where Plaintiff asked to review the evidence. Ashcraft and Suwe were part of the disciplinary hearing committee that denied Plaintiff the opportunity to review the evidence presented against Plaintiff. Therefore, summary judgment should be granted in Plaintiff's favor and against Hollaway, Robison, Ashcraft, and Suwe insofar as Plaintiff alleges he was not provided an opportunity to review the evidence against him for OIC 502792, he was not given a legitimate penological reason for the withholding of this evidence, and the charge was not supported by some evidence.

1    Again, Defendants argue they are entitled to summary judgment with respect to the
2   Defendants who did not personally participate in the alleged constitutional violation. There is no
3   evidence in the record that Daniels, Williams, or Olsen had any involvement in the decision to
4   deny Plaintiff the opportunity to review the evidence against him with respect to OIC 502792.
5   Plaintiff argues that each of the Defendants had knowledge of the violation of his rights, but he
6   provides no evidence how Daniels, Williams, or Olsen had any knowledge regarding the
7   evidence used against him in OIC 502792. Therefore, summary judgment should be granted
8   under Rule 56(f) in favor of Daniels, Williams, and Olsen as to this aspect of Plaintiff's due
9   process claim for OIC 502792.

10        **b. Impartiality**

11    Due process requires an unbiased hearing officer. *See Wolff*, 418 U.S. at 571. Generally,
12   courts have interpreted this to mean that "a prison official who witnesses or investigates an
13   incident cannot sit on a disciplinary committee that determines whether a particular inmate was
14   guilty of any wrongdoing in that incident." *Willoughby v. Luster*, 717 F.Supp. 1439, 1441 (D.
15   Nev. 1989).

16    Plaintiff asserts that Suwe should not have been on the disciplinary committee for OIC
17   502972 because he investigated and charged Plaintiff in OIC 501633. There is no evidence
18   before the court that Suwe was a witness in or was part of the investigation for OIC 502972. In
19   fact, the discovery responses Plaintiff submits in support of his motion confirm Suwe had no
20   involvement in the investigation of OIC 502972. (ECF No. 41 at 21, Olsen response to Request
21   for Admission (RFA) 3; ECF No. 41 at 125, Ashcraft response to Interrogatory 4.)

22    Therefore, Plaintiff's motion for summary judgment is denied insofar as he claims that
23   Suwe violated his due process rights by being a part of the disciplinary committee for OIC

1  502792. Conversely, summary judgment is granted under Rule 56(f) in Suwe's favor as to this

2  aspect of Plaintiff's due process claim as Plaintiff had a full opportunity to litigate this issue. *See*

3  Fed. R. Civ. P. 56(f)(1).

4  **c. Preliminary Hearing Statement by Robison**

5  Plaintiff argues that Robison's incorrect statement in the preliminary hearing report that

6  substance testing was done with respect to OIC 502972 impacted his disciplinary hearing and

7  appeal. However, it was clarified at the disciplinary hearing by Ashcraft that the statement was a

8  mistake and that, in fact, no testing was conducted with respect to OIC 502972. Ashcraft also

9  confirmed he was not relying on Robison's statement in finding Plaintiff guilty of that charge.

10  Plaintiff's motion for summary judgment is denied insofar as he claims his due process

11  rights were violated when Robison included a statement that substance testing was done in his

12  preliminary hearing report for OIC 502972. Summary judgment is granted in favor of Robison

13  insofar as this aspect of Plaintiff's due process claim for OIC 502792 is concerned.

14  **C. Qualified Immunity**

15  "Defendants are entitled to qualified immunity if (1) the alleged conduct did not violate a

16  constitutional right or (2) that right was not clearly established at the time of the alleged

17  violation." *Melnik*, 14 F.4th at 985 (citation omitted).

18  Defendants argue they are entitled to qualified immunity because there was no

19  constitutional violation, and because the law was not clearly established.

20  The court has found there were constitutional violations by some of the Defendants with

21  respect to providing Plaintiff an opportunity to review the evidence being used against him in his

22  disciplinary proceedings. For the other claims proceeding, the court found there is a genuine

23  issue of fact as to whether Plaintiff had access to certain evidence being used against him. If the

1   facts concerning those claims are taken in the light most favorable to Plaintiff, a reasonable jury

2   could conclude that his due process rights were violated.

3       *Melnik* held it was clearly established that an inmate has a general right to access

4   evidence to be used against him in a disciplinary proceeding unless the refusal is supported by a

5   legitimate penological purpose.

6       Defendants do not present a qualified immunity argument specific to Plaintiff's claim that

7   the guilty finding in OIC 501633 was not supported by some evidence because of the use of the

8   allegedly unreliable ampule test. Therefore, they have not demonstrated they are entitled to

9   qualified immunity with respect to that claim.

10      In sum, Defendants are not entitled to qualified immunity at this juncture.

11                              **IV. CONCLUSION**

12      Plaintiff's motion for partial summary judgment (ECF No. 41) is **GRANTED IN PART**

13  **AND DENIED IN PART,** and Defendants are entitled to summary judgment in their favor as to

14  certain aspects of Plaintiff's claims under Rule 56(f), as follows:

15      (1) Plaintiff's motion for summary judgment is **DENIED** insofar a Plaintiff alleges that

16  his due process rights were violated because the disciplinary finding for OIC 501633 was not

17  supported by some evidence as a result of the use of the ampule test.

18      (2) Defendants' request for summary judgment under Rule 56(f) is **DENIED** as to

19  Defendants Suwe, Ashcraft, and Williams, and **GRANTED** as to Defendants Daniels, Hollaway,

20  Robison, and Olsen insofar as Plaintiff alleges that his due process rights were violated because

21  the disciplinary finding for OIC 501633 was not supported by some evidence as a result of the

22  use of the ampule test.

23

(3) Plaintiff's motion for summary judgment is **DENIED** insofar as he alleges that his due process rights were violated by not being given the photographic and mail evidence to support OIC 501633.

(4) Defendants' request for summary judgment under Rule 56(f) is **DENIED** as to Defendants Suwe, Ashcraft, and Williams, and **GRANTED** as to Defendants Daniels, Hollaway, Robison, and Olsen insofar as Plaintiff alleges that his due process rights were violated by not being given the photographic and mail evidence to support OIC 501633.

(5) Plaintiff's motion for summary judgment is **GRANTED** and Defendant's request for summary judgment under Rule 56(f) is **DENIED** as to defendants Suwe, Ashcraft, and Williams insofar as Plaintiff alleges that his due process rights were violated when he was not given the positive test result or other sensitive information in support of OIC 501633.

(6) Plaintiff's motion for summary judgment is **DENIED** and Defendants' request for summary judgment under Rule 56(f) is **GRANTED** as to defendants Daniels, Hollaway, Robison, and Olsen insofar as Plaintiff alleges that his due process rights were violated when he was not given the positive test result or other sensitive information in support of OIC 501633.

(7) Plaintiffs' motion for summary judgment is **GRANTED** and Defendants' request for summary judgment under Rule 56(f) is **DENIED** as to Defendants Hollaway, Robison, Ashcraft, and Suwe insofar as Plaintiff alleges that he was not allowed to review the evidence to support OIC 502792, was not given a legitimate penological reason for denying his review of this evidence, and that OIC 502792 was not supported by some evidence.

(8) Plaintiff's motion for summary judgment is **DENIED** and Defendants' request for summary judgment under Rule 56(f) is **GRANTED** as to Defendants Daniels, Williams, and Olsen insofar Plaintiff alleges that he was not allowed to review the evidence to support OIC

502792, was not given a legitimate penological reason for denying his review of this evidence, and that OIC 502792 was not supported by some evidence.

(9) Plaintiff's motion for summary judgment is **DENIED** and Defendants' request for summary judgment under Rule 56(f) is **GRANTED** insofar as Plaintiff alleges that his right to due process was violated because the disciplinary hearing was not impartial for OIC 502792 because Suwe was part of the disciplinary hearing committee.

(10) Plaintiff's motion for summary judgment is **DENIED** and Defendants' request for summary judgment under Rule 56(f) is **GRANTED** insofar as Plaintiff alleges that his due process rights were violated when Robison stated in the preliminary hearing form for OIC 502792 that substance testing was done.

In sum, this action is proceeding with the following claims as to both liability and damages: (1) Plaintiff's due process claim regarding the use of the ampule test with respect to OIC 501633 as to defendants Suwe, Ashcraft, and Williams; and (2) Plaintiff's due process claim regarding not being given the photographic and mail evidence for OIC 501633 as to defendants Suwe, Ashcraft, and Williams. The following claims are proceeding with respect to damages only: (1) Plaintiff's due process claim that he was not given the positive test result or other sensitive information for OIC 501633 as to Defendants Suwe, Ashcraft, and Williams; and (2) Plaintiff's due process claim against Defendants Hollaway, Robison, and Ashcraft that he was not given access to review the evidence to support OIC 502792, he was not given a legitimate penological reason for being denied access to this evidence, and that his finding of guilt for OIC 502792 was not supported by some evidence.

Defendants have **seven days** from the date of this Order to file a dispositive motion concerning only those claims proceeding as to liability and damages: (1) Plaintiff's due process

claim regarding the use of the ampule test with respect to OIC 501633 as to defendants Suwe, Ashcraft, and Williams; and (2) Plaintiff's due process claim regarding not being given the photographic and mail evidence for OIC 501633 as to defendants Suwe, Ashcraft, and Williams. To reiterate, Defendants may not file a motion for summary judgment as to those claims for which Plaintiff has been granted summary judgment as to liability.

Those claims will proceed to trial on the issue of damages after any further dispositive motions are addressed.

**IT IS SO ORDERED**.

Dated: August 27, 2024

_____
Craig S. Denney
United States Magistrate Judge